**Banner & Witcoff, Ltd.**
INTELLECTUAL PROPERTY LAW

TEN SOUTH WACKER DRIVE
SUITE 3000
CHICAGO, ILLINOIS 60606-7407

TEL: 312.463.5000
FAX: 312.463.5001
www.bannerwitcoff.com

November 19, 2014

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    **Re:**    *Converse Inc. v. Nowhere Co., Ltd. d/b/a Bape*, **1:14-cv-05991-BMC**
              **Fed. R. Civ. P. 26(f) Report**

Dear Judge Cogan,

    Pursuant to the Court's October 14, 2014, Order, Fed. R. Civ. P. 26(f), and in view of the parties' conference, the parties submit the following report:

I.    DESCRIPTION OF THE CASE

    A.    Plaintiff's Statement

    Converse Inc. ("Converse") filed suit against Nowhere Co., Ltd. d/b/a Bape ("Bape") in this Court on October 14, 2014, alleging that Bape willfully violates Converse's common law and federal trademark rights in the appearance of the midsole design used in connection with Converse Shoes, in particular, in the midsole design made up of a toe bumper and a toe cap, plus either an upper stripe and/or a lower stripe, including U.S. Trademark Registration No. 4,398,753 (collectively, the "Asserted Trademark"). On that same date, Converse also filed a complaint against Bape and others in the United States International Trademark Commission (the "ITC"), asserting the same common law and federal trademark rights at issue in this case. The ITC instituted its investigation on November 12, 2014, as Investigation No. 337-TA-936.

    In its Complaint in this case, Converse alleges causes of action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair business practices, under the Trademark Act of 1946, 15 U.S.C. §§ 1114, 1125(a), and 1125(c); New York General Business Law §§ 133, 349, and 360; and the common law of the State of New York, at least in view of Bape's sales, offers for sale, distribution, promotion, and/or advertising of footwear products bearing confusingly similar imitations of Converse's asserted trademark, including at least the "ABC Camo ApeSta" footwear products.

November 19, 2014
Page 2

    The table below compares Converse's Asserted Trademark (left) to an image of a representative accused product (right).  The accused products use the same midsole design covered by the Asserted Trademark, as shown below.



| Exemplary Images of Converse's Asserted Trademark | Exemplary Image of Bape's Accused Products |
|---|---|
| | ABC Camo ApeSta |

    This Court has subject matter over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a), and the Court may exercise personal jurisdiction over Bape based upon its contacts with this forum, including at least regularly and intentionally doing business here and committing acts giving rise to this lawsuit here.

    On October 24, 2014, counsel for Converse sent a letter to the Yoshihide Kurihara, President of Bape, notifying Bape of the lawsuit and requesting that Bape waive service of the summons.  Because Bape resides in Japan, if Bape agrees to waive service, its Answer or other response to the Complaint will be due January 22, 2015.

      B.      Defendant's Statement

Defendant intends to proffer several defenses to Converse's claim of infringement of its alleged trade dress. These will include the following:

- Functionality: Product elements that are functional cannot be protected as source-indicative. Defendant will allege that most of the elements of Converse's alleged trade dress are functional.

- Genericism: Generic words, symbols, or as is the case here, product elements cannot be protected as trademarks. Defendant will allege that the product elements for which Converse seeks protection ("The Product Elements") are generic in that they have always been the common, core, elements of the American canvas sneaker.

- Descriptiveness/Indistinctiveness: Merely descriptive or indistinctive words, symbols, or as is the case here, product elements cannot be protected as trademarks. In order to be entitled to trademark protection, such indistinctive elements would have to acquire "secondary meaning" as indicators of source. Defendant will allege that the crowded field in which Converse started selling and continued to sell its canvas sneakers precluded any secondary meaning or distinctiveness of The Product Elements.

- Abandonment/Loss of Distinctiveness: Trademark protection can be lost through abandonment. Abandonment can result from non-use or from widespread third-party use. Defendant will allege that if The Product Elements were not generic or functional, and even if The Product Elements had acquired secondary meaning at some point, Converse abandoned the so-called trademark rights in The Product Elements through failure to police the mark and through the resulting sea of other canvas sneakers that possess the elements.

- Defendant will allege laches, waiver and/or estoppel.

Defendant will also seek the cancellation of the U.S. Trademark Registration number 4,398,753.

    II.      DISCOVERY PLAN

      A.      Plaintiff's Statement

Converse will require discovery on Bape's alleged violations of Converse's Asserted Trademark, Bape's intent, and Converse's claim for monetary and injunctive remedies. In particular, this discovery will include Bape's use, promotion, and sales of accused products, including its knowledge of Converse's trademark. Converse will also require discovery about Bape's corporate structure and supply chains, consumer demographics, market and distribution channels, pricing and costing, and alternative product designs. Converse may also require discovery of non-parties regarding the distinctiveness of the Asserted Trademark; the exclusiveness of Converse's use of the Asserted Trademark; the non-functional nature of the Asserted Trademark; the existence of alternative, non-infringing designs; and/or the existence of confusion and associations in the marketplace. This case will also require expert discovery,

November 19, 2014
Page 4

including trademark surveys and expert reports on a variety of issues including protectability, liability (e.g., likelihood of confusion and dilution), and remedies.

Discovery may be further complicated in this case because Bape is a foreign defendant, residing in Japan, and it is anticipated that at least some of Bape's relevant witnesses and documents will be primarily located in Japan.

B.   Defendant's Statement

Discovery will also be required on any defenses, affirmative defenses and/or counterclaims raised by Bape. Such discovery will come from Converse, and likely also from third-parties. In particular, this discovery will include the history of Converse's adoption and use of The Product Elements; the use by others of elements identical or similar to The Product Elements and Converse's knowledge of and acquiescence to such use; the functionality of The Product Elements; claims or statements by Converse or others regarding the functionality of The Product Elements; Converse's acquisition, ownership and sale of the PF Flyer marks and designs and the facts and circumstances surrounding such acquisition and sale; Converse advertising or promotions that called out the source-indicative attributes of each of Converse's word marks, logos, design marks, trade dress including The Product Elements; Converse's dollar annual sales since the introduction of The Product Elements, including those years in which Converse claims financial considerations precluded it from policing its marks; Converse's efforts to enforce its alleged rights in The Product Elements; Converse's advertising or promotional material and efforts that featured The Product Elements but none of Converse's other word marks, logos or design; evidence of actual confusion between the parties' products; surveys intended to determine the source-indicative value of The Product Elements or the likelihood of confusion between the parties' goods and expert reports regarding the same; changes in Converse's sales attributable to Defendant's goods.

C.   Both Parties' Statement

For the reasons set forth above, this is a relatively complex case requiring substantial fact, non-party, and expert discovery, including discovery of a foreign defendant. In preparation for the upcoming Initial Status Conference on November 24, 2014, the parties attach as Exhibit 1, a proposed Case Management Plan using the form provided with the Court's October 14, 2014, Order, including a proposed schedule of deadlines in Attachment A. The parties propose that discovery should be conducted and completed according to the proposed schedule attached in Attachment A to the proposed Case Management Plan, and should be phased with fact discovery being completed first, followed by expert discovery, followed by dispositive motions.

As laid out in the proposed schedule, the parties agree that they will exchange Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) within one week after Bape files its Answer to the Complaint. The parties anticipate that they will be able to complete discovery, both fact and expert discovery, within twelve months of the date that Bape Answers the Complaint. The parties propose a deadline of October 16, 2015, for the completion of fact discovery, and January 22, 2016, for the completion of expert discovery, including the exchange of reports, rebuttal reports, and expert depositions.

November 19, 2014
Page 5

    Because this is a trademark case where expert surveys can be probative of relevant fact issues, the parties respectfully request that expert discovery precede the filing of dispositive motions, if any. The parties propose February 12, 2016, as the deadline to file dispositive motions.

    Further to the parties' Rule 26(f), Fed. R. Civ. P., conference, the parties further agree to a plan for inadvertent production and clawback as set forth in paragraph G of the enclosed proposed Case Management Plan.

    The parties have both been advised of their obligation to preserve relevant and discoverable documents and ESI, and have suspended any deletion/modification programs in connection with relevant documents, communications, and/or ESI.

III.    CONTEMPLATED MOTIONS

    The parties do not contemplate any motions at this time.

IV.    REFERRAL TO MAGISTRATE JUDGE

    The parties do not consent to referring the case to a magistrate judge for trial.


Respectfully submitted,


| /s/Katherine Laatsch Fink | /s/Kieran G. Doyle |
|---|---|
| Robert L. Powley (RP 7674) | Kieran G. Doyle |
| James M. Gibson (JG 9234) | Cowan, Liebowitz & Latman |
| Stephen M. Ankrom (SA 5375) | 1133 Avenue of the Americas |
| POWLEY & GIBSON, P.C. | New York, NY 10036 |
| 304 Hudson Street – Suite 202 | (212) 790-9261 |
| New York, NY 10013 | kgd@cll.com |
| Telephone: (212) 226-5054 | |
| Facsimile: (212) 226-5085 | |
| rlpowley@powleygibson.com | ***Attorney for Defendant, Nowhere Co., Ltd.*** |
| jmgibson@powleygibson.com | ***d/b/a Bape*** |
| smankrom@powleygibson.com | |
| | |
| Christopher J. Renk (pro hac vice) | |
| Erik S. Maurer (pro hac vice) | |
| Michael J. Harris (pro hac vice) | |
| Katherine Laatsch Fink (pro hac vice) | |
| Audra C. Eidem Heinze (pro hac vice) | |
| Aaron P. Bowling (pro hac vice) | |
| BANNER & WITCOFF, LTD. | |
| 10 S. Wacker Drive, Suite 3000 | |

November 19, 2014
Page 6

   Chicago, Illinois  60606
   Telephone: (312) 463-5000
   Facsimile: (312) 463-5001
   crenk@bannerwitcoff.com
   emaurer@bannerwitcoff.com
   mharris@bannerwitcoff.com
   kfink@bannerwitcoff.com
   aheinze@bannerwitcoff.com
   abowling@bannerwitcoff.com

***Attorneys for Plaintiff, Converse Inc.***


CC: All counsel of record